**1443-15**

CASE NO: 10-15-00004-CR
IN THE COURT OF APPEALS
FOR THE TENTH DISTRICT

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

ANTARIUS DEMON ASHLEY
VS.
STATE OF TEXAS

Appeal from the 85th Judicial District Court of
Brazos County, Texas
Cause No. 14-00152-CRF-85

Petition For Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

Respectfully Submitted
1971304
Antarius Demon Ashley #1971304
French M. Robertson Unit
12071 FM 3522
Abilene Tx 79601

# NAMES OF ALL PARTIES

Appellant: Antarius Damon Ashley

Appellate Counsel: Mary Hennessy
State Bar No. 09472300
P.O. Box 2536
Brenham Texas 77833
Telephone: 979-277-0757

Trial Counsel: Marvin B. Martin
State Bar No. 13094300
4103 South Texas Ave. Suite 108
Bryan, Texas 77802
Telephone: 979-846-8511

Appellee: STATE of TEXAS

Trial Counsel: John Brick
State Bar No. 24077302
William Ward
State Bar No. 24077302

Appellate Counsel: Douglas Howell, III
State Bar No. 16698100
Assistant Brazos County District Attorney
360 East 26th Street, Suite 310
Bryan, Texas 77803
Telephone: 979-361-4342

Trial Court: The Honorable J.D. Langley
85th Judicial District Court
300 East 26th Street, Suite 224
Bryan, Texas 77803
Telephone 979-361-4270

# TABLE OF CONTENTS

Names of all Parties _ _ _ _ _ _ _ _ _ _ _ _ _ _ ii

Table of Authorities _ _ _ _ _ _ _ _ _ _ _ _ _ iv

Issues Presented _ _ _ _ _ _ _ _ _ _ _ _ _ V

Summary of Argument _ _ _ _ _ _ _ _ _ _ V

Statement of the Case _ _ _ _ _ _ _ _ _ _ _ _ Vi

Statement of FACTs _ _ _ _ _ _ _ _ _ _ _ 1

Point of Error One _ _ _ _ _ _ _ _ _ _ _ _ 4

Point of Error Two _ _ _ _ _ _ _ _ _ _ _ 7

Prayer _ _ _ _ _ _ _ _ _ _ _ _ _ 11

Certificate of Service _ _ _ _ _ _ _ _ _ _ 12

# TABLE OF AUTHORITIES

CASES:

Blake V. State, 971 S.W.2d. 451 (Tex.Crim.App.1998)    4,7

Brook V. State, 323 S.W.3d.893 (Tex.Crim.App.2010)    4

Cathey V. State, 992 S.W.2d. 460 (Tex.Crim.App.1999)    8

Cox V. State, 830 S.W.2d. 609 (Tex.Crim.App.1992)    7

Edwards V. State, 813 S.W.2d. 572 (Tex.App.-Dallas,1991,pet ref'd.)    4

Gaston V. State, 324 S.W.3d. 905 (Tex.Crim.App.-Houston [14 Dist] 2010)    7

Goff V. State, 931 S.W.2d.537 (Tex.Crim.App. 1996)    8

Jackson V. Virginia, 443 U.S. 307 (1979)    4,5

Knox V. State, 934 S.W.2d. 678 (Tex.Crim.App.1996)    7

Kunkle V. State, 771 S.W.2d. 435 (Tex.Crim.App.1988) cert denied    8

Laster V. State, 275 S.W.3d. 512 (Tex.Crim.App.2009)    5

Manson V. Brathwaite, 432 U.S. 98, 97 S.Ct.2243 (1977)    6

Matson V. State, 819 S.W.2d. 839,846 (Tex.Crim.App.1991)    4

Munoz V. State, 853 S.W.2d. 558 (Tex.Crim.App 1993)    7

Navarro V. State, 863 S.W.2d. 191 (Tex.Crim.App.1993)    8

Paulus V. State, 633 S.W.2d. 827 (Tex.Crim.App.1981)    7

Neil V. Biggers, 409 U.S. 188, 93 S.Ct. 375 (1972)    6

Torres V. State, 137 S.W.3d. 199 (Tex.App.-Houston [1st Dist] 2004    7

Wicker V. State, 667 S.W.2d. 137 (Tex.App. 1984)    4

Williams V. State, 235 S.W.3d. 742 (Tex.Crim.App. 2007)    5

STATUTES

TEX. CODE CRIM PRO. ANN Art. 38.14    iv, 7, 8

## ISSUES PRESENTED

### Point of Error One

THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT A VERDICT OF GUILT.

### Point of Error Two

THE CONVICTION SHOULD BE REVERSED IN ACCORDANCE WITH TEX.CODE.CRIM. PRO. ART. 38.14 BECAUSE THERE WAS INSUFFICIENT INDEPENDENT EVIDENCE TO CORROBORATE THE INCULPATORY TESTIMONY OF CAMILLE ASHLEY, AN ACCOMPLICE WITNESS.

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

COMES NOW, Antarius Demon Ashley, Appellant, by and through his attorney of record. And files this Petition For Discretionary Review.

## SUMMARY OF THE ARGUMENT

Appellant raises two issues for the court's review. Appellant contends ut no rational trier of facts could have found the evidence sufficient iyond a reasonable doubt that he was the perpetrator of a robbery. ldditionally, Appellant contends that the evidence corroborating the stimony of the accomplice witness did not tend to connect him the offense to a sufficient degree but rather simply cast suspicion him due to his association with the accomplice near the time the offense.

## STATEMENT OF THE CASE

Appellant was indicted on January 9, 2014 for the offense of robbery, lleging that, on October 28, 2013, while in the course of committing heft he intentionally, knowingly, or recklessly caused bodily injury to Amanda Kraft. The indictment also contained two enhancement paragraphs.

Trial was to the jury commencing on December 2, 2014. Appellant was onvicted on December 3, 2014. Appellant pleaded true to the two enhancement nd was Sentenced by the jury to forty (40) years confinement in the exas Department of Correction — Institutional Division.

c/conv Petition For Discretionary Review

<u>iv</u>

## STATEMENT OF FACTS

Ryan Thomas testified that on October 28, 2013, he was traveling ith his wife and three young children along Texas Avenue in College hen his wife alerted him to an incident occurring across the road in the enny's parking lot where a man was beating a woman. He observed e women push against a truck that had the door open with a man acking her. Upon seeing the altercation, Mr. Thomas swerved across the coming traffic to the scene while his wife called 911. (R.R. Vol. 2, 14-17).

Mr. Thomas testified that his wife gave the dispatcher a description the assailant as a heavyset, black male wearing a grey sweatshirt id pants and a black and white hat. Mr. Thomas and his wife were able also decribe the vehicle that the man got into as a white, four door ia with the license plate BYL 7670. A recording of the 911 call which con-formed this conversation, was admitted at one point losing sight of it when

Mr. Thomas pursued the KIA though he admitted at one point losing ght of it when the vehicle stopped for about 30 seconds on the other side a hedgerow nearby some apartments. He also admitted that he did not get good look at the assailant. Mr. Thomas confirmed that, though shown photo line up which Appellant has was unable to identify Appellant (R.V. 2, 20-23-30).

Initially, the man was fleeing on foot traveling parallel to the ad through a La Quinta parking lot. Mr. Thomas stated that he observed car parked nearby in an office building lot passed La Quinta where ere was "no reason for a car to be parked." The assailant, as Mr. omas reportedly did not go straight to the KIA but turned towards the uildings and then the KIA drove over and picked him up. (R.R. V. 2, 24-25).

As Mr. Thomas trailed the KIA he and his wife remained on the phone 'th the 911 dispatcher and related their route. After the short interval hen the car was out of view and stopped behind hedgerow, the KIA arted backing up towards Mr. Thomas. He then reversed and it was at that int the polic car arrived. Mr. Thomas directed the officers who stopped he KIA. (R.R. V. 2, 26-28).

While Mr. Thomas said his wife had a better view of the initial altercation, testified that he did see the man dramatically pull the purse from the woman. (R.R.V.2.29).

He never got a good look at the man's face but did get a good look this clothing. He was unable to pick anyone out of a photo lineup (R.R. 2.22-23, 32).

Amanda Kraft, testified that at in October 2014, she was a manager at the Denny's in College Station. At the time of the incident the protocol for the day manager was to take the money from the day before and deposit it at the bank between 9:30 and 10:00 (R.R.V.2.33-35).

The morning of October 28, 2014, she was running a little late to make the deposit. As she left Denny's heading to her car, as she rounded the corner she noticed a man in grey sweatshirt and pants and had a grey baseball cap who began asking her if various people worked there. She responded "No" and continued to her truck. She described the assault as follows:

I got — my uncomfortable feeling got stronger so I tried to get in my truck. I got the door open and he was on me. I don't know if I turned from the feeling of somebody being behind me or if he turned me around; but from here up was in my truck, the rest of it was laying out on ground, and he was literally on me and my purse was on my arm and behind me and he was trying to pull on it, but he was slamming me around and kept repeating "shut up bitch" because I was screaming like blood curdling. Help me. Help me." And I was kicking and I was hitting and I was trying to push him off. And this went on for several seconds. And he pulled hard enough and my purse broke and he fell backwards. And I sat there for a second, and then my brain said scramble. So I scrambled back as fast as I could. And I was this close to having my door shut, and he ripped it open and was on me again. And I tried to fight back again still screaming and seconds later he had freed my purse from behind me and took off. (R.R.V.2.38).

As she fled into Denny's to call 911, she heard squealing tires and saw white SUV drive into lot. In court she identified Appellant as her assailant. (R.R.V.2.37-38).

Conv/cc Petition For Discretionary Review
PAGE 2

In regard to her injuries, Amanda Kradft said that her head and shoulder [b]unced into the steering wheel as she was thrashed about, which hurt. [sh]e also had a bandaged burn at the time of the incident, which was [t]orn open and hurt. In addition, she testified that she also had an [i]njury to her leg for which she could not specifically determine a [c]ause. (R.R.V.2, 43-44).

Amanda Kraft was shown a photo lineup that included Appellant but [w]as unable to identify him. She explained her inability as being due [to] the fact that the photos were black and white and she found it [di]fficult to distinguish black people in black and white photos. She [al]so stated that she was "face to face" with him as he laid on top of [h]er in the scuffle for the purse. (R.R.V.2, 42, 45.).
She identified the bank bag that was admitted into evidence as being [her] purse with the money at the time of the incident. (R.R.V.2, 46).

Delicia Ashley, Appellant's sister testified that on the day Appellant was [a]rrested for the robbery, he was living with her. She woke him that [m]orning. He left the apartment with Camille Ashley, their cousin, who [w]as driving a white vehicle. Ms. Ashley believed the vehicle belonged [to] Latavia Whatley, a cousin of Camille. Appellant arrive back at the [ap]artment about 1 or 2 in the afternoon and was arrested later that [da]y. (R.R.V.2, 53-55).

Damian Anderson, College Station Police Officer, testified that on October [2]2019, he responded to a robbery call in which dispatch gave the description [of] a white KIA, license plate number BJL 7670, as the get away vehicle. He [loc]ated the vehicle at an apartment complex being driven by Camille Ashley. [R.R.V.2, 58).

According to Officer Anderson, upon questioning by him, Ms. Ashley initially [den]ied anyone had been in the car with her but then she told Officer Anderson [tha]t Appellant had been with her. (R.R.V.2 59).

A wallet was found in the glove box of the KIA containing Appellant's [dri]ver's license, social security card and work force solution card. The [dri]ver's license was a year expired. Camille Ashley drove with officer [And]erson to point out her driving route prior to being apprehended [an]d pointing out the spot, on the 800 block of Nimitz street, where she

Copy Petition For Discretionary Review
PAGE 8

armed she kicked Appellant out of her car. (R.R.V.2. 60, 61, 63).
Camille Ashley testified that on the day of the incident she was in Calvert riding to Bryan and Appellant wanted to ride with her. She testified that she dropped him off near the Barnes and Noble close to Denny's and then saw him some hours later in that general location. He walked to her and she drove over to a parking area he then walked over and got back in her car. She was chased, became suspicious and kicked him out of the car. She denied any involvement or knowledge of a robbery. She testified that her cousin Latavia worked at Denny's. (R.R.V.2. 65-71).

Jame Ingram, a College Station Police Officer, was charged with the investigation of the case. He checked the trashcans in the area where the KIA was seen and found in a trashcan in the vicinity of 800 Nimitz on Avenue A, a sweatshirt and cap. He also found on the grass the 800 block of Nimitz a black and pink purse and grey vinyl bank as marked Denny's. There was no money in the bank bags. In the KIA was Amanda Kraft's wallet. (R.R.V.2. 83-85).

## POINT OF ERROR NUMBER ONE

THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT

### STANDARD OF REVIEW

In conducting a sufficient review, the court views the evidence in light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements beyond reasonable doubt. Brooks Vs State, 323 S.W.3d, 853 at 899 (Tex. Crim. App. 10); Jackson Vs. Virginia, 443 U.S. 307, 319 (1979). The standard is the one for both direct and circumstantial evidence. Edwards Vs. State, 813 2d, 572, 575 (Tex. App.-Dallas 1991, pet ref'd). In evaluating a legal sufficiency challenge, the issue is not whether the court believes the state's evidence or believes the defense evidence outweighs the state's evidence. Wicker Vs State, 667 S.W. 2d. 137, 143 (Tex. Crim. App. 1984). The verdict may not be returned unless the verdict is irrational or unsupported by proof beyond reasonable doubt. Matson Vs. State, 819 S.W. 2d 839, 846 (Tex. Crim. App. 1991).

# ARGUMENT AND AUTHORITIES

Evidence is insufficient to support a conviction if considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense is proven beyond a reasonable doubt. See Jackson Vs. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d, 560 (1979); Laster Vs. State, 275 S.W. 3d, 517 (Tex. Crim. App. 2009); Williams Vs. State, 235 S.W. 3d, 742, 750 (Tex. Crim. App. 2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "Modicum" of evidence, probative of the offense; or (2) the evidence conclusively establishes a reasonable doubt. Jackson Vs. Virginia, 443 U.S. at 314; Laster Vs. State, 275 S.W. 3d, 118; Williams Vs. State, 235 S.W. 3d, at 750.

In the instant case, Appellant does not challenge the sufficiency of the evidence on robbery elements. Amanda Kraft testified clearly that was accosted at her vehicle and struggled with her attacker over her purse containing bank bags. She further testified that the attack resulted in pain in her arm and shoulder and an injury to her leg that was still present at the time of trial. Ryan Thomas observed a part of the struggle including yanking of the purse from Ms. Kraft. Ms. Kraft's purse was found in close proximity to empty Denny's bank bags. The evidence viewed in the light most favorable to the verdict does support a finding that Amanda Kraft was a victim of a robbery.

However, the evidence is inadequate to establish beyond a reasonable doubt that Appellant was the perpetrator. Amanda Kraft identified Appellant more than a year [after] the event in the courtroom as the assailant; however, was unable to identify him in a photo lineup immediately following the occurrence. Ryan Thomas was also shown a photo lineup and did not identify Appellant. The potential fallibility of eyewitness identification has long been recognized and the U.S. Supreme Court has established a number of factors to be considered in evaluating the likelihood of misidentification, these include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the

the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil Vs. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382 (1972); Manson Vs. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977). Ms. Kraft did not even look directly at the assailant as she passed him going to her car and then, when she was accosted, she was naturally in a state of great agitation. There was no testimony cited] that she ever had a good look at his face. While she claimed certainty when making her in court identification, it is hard to imagine means of identification more likely to result in a misidentification than to ask a witness if the person sitting in the defendant's chair is the perpetrator. And, while she claimed to be certain in Court, she was unable to do so in the photo line up just after the incident. Mr. Thomas also professed certainty when he made the in-court identification but was unable to make any identification from the photo line up. Ms. Kraft also failed to give accurate details of the suspect's facial characteristics in the descriptions she gave immediately following the event. She was only able to describe his clothing and body type, which would have been apparent watching him flee. Surely, no rational juror could give much weight to the in court identification.

The evidence elicited from Camille Ashley established only that Appellant was in the vicinity of the robbery at that time of the robbery and that he had something in his hand that may have been a purse, which he had not had earlier in the day. There was no description given of the purse that would indicate it was the one stolen from Ms. Kraft. There was no description by either Delicia Ashley or Camille Ashley of the clothing worn by Appellant that day that would indicate he was the man in the grey sweats. There was no forensic evidence admitted tying Appellant to the purse, bank bags, sweats or cap.

In conclusion, taking the evidence in light most favorable to the verdict, Appellant maintains that the evidence was legally insufficient to support a finding by the jury beyond a reasonable doubt that Appellant committed the robbery. For that reason, the conviction should be reversed.

c/conv Petition For Discretionary Review

PAGE 6

## POINT OF ERROR NUMBER TWO

THE CONVICTION SHOULD BE REVERSED IN ACCORDANCE WITH TEX. ODE CRIM. PRO. ART. 38.14 BECAUSE THERE WAS INSUFEICIENT INDEPENDENT EVIDENCE TO CORROBORATE THE INCULPATORY TESTIMONY OF CAMILLE ASHLEY, AN ACCOMPLICE WITNESS

### STANDARD OF REVIEW

When determining the sufficiency of corroborating evidence, a reviewing Court is required to eliminate the testimony of the accomplice witness and examine whether the remaining evidence tends to connect the accused to the charge offense. Knox Vs. States, 934 S.W. d. 678, 686 (Tex.Crim.App. 1996), Gaston Vs. State, 324 S.W.3d. 905, 909 Tex.App.-Houston [14th Dist] 2010). If not, the defendant is entitled to a dgment of acquittal. Torres Vs. State, 137 S.W.3d. 191, 196 (Tex. App. uston [1st Dist] 2004); Tex. Code Crim. Proc. Ann. Art. 38.14.

The corroborating evidence may be direct or circumstantial. Munoz Vs. State, 853 S.W.2d. 558, 569 (Tex. Crim. App. 1993) Gaston, 324 at 9. Standing alone, it need not establish the guilt of the accused. ox Vs. State, 830 S.W.2d. 609, 611 (Tex.Crim. App. 1992). Nevertheless, the orroboration must tend to connect the accused to the commission of he offense; if it does no more than point the finger of suspicion r him, it is not sufficient enough to support a conviction. Paulus State, 633 S.W.2d. 827, 844 (Tex.Crim.App. 1981).

### ARGUMENT AND AUTHORITIES

The Texas Legislature has established that a "conviction cannot be d upon the testimony of an accomplice unless corroborated by other idence tending to connect the defendant with the offense" Tex. Code im. Proc. Ann. Art. 38.14 (West Law 2005). "The rule reflects a legislative termination that an accomplice testimony implicating another person uld be viewed with a measure of caution. "since" accomplices often have entives to lie... [and] avoid punishment or shift the blame to another rson." Blake Vs. State, 971 S.W.2d. 451, at 454 (Tex.Crim.App. 1998).

Evidentiary sufficiency under the accomplice witness rule is a separate set of review created by statue that is independent from legal & factual sufficiency review as defined by the federal and state institutions, Cathey Vs. State, 992 S.W.2d, 460,462-63 (Tex.Crim.App. 1999).

A. <u>Camille Ashley was an accomplice witness.</u>

The rule regarding the circumstances under which a defendant can be convicted upon the testimony of an accomplice is stated In TEX. CODE CRIM PROC. Art, 38.14. In circumstances where an accomplice witness has provided testimony against a defendant, a defendant is entitled to an instruction that a conviction cannot be based upon the testimony of the accomplice unless it is corroborated by other evidence tending to connect the defendant with the offense committed and further, that the corroboration is not sufficient if it merely shows the commission of the offense. TEX.CODE CRIM.PROC.ART. 38.14.

A witness indicted for the same offense as the defendant is an accomplice as a matter of Law. Goff Vs. State, 931 S.W.2d. 537 at 542 (Tex.Crim. App. 1996). In addition, one who is susceptible to prosecution for the offense with which the accused is charged is also an accomplice as a matter of Law. Kunkle Vs. State. 771 S.W. 2d. 435, 439 (Tex.Crim.App.1988) cert denied, 492 U.S. 925 (1989). when there is no doubt about the proper characterization of a witness as an accomplice as a matter of Law, the trial court has a duty to instruct the jury that the witness and his testimony should be considered as subject to the additional scrutiny of Article 38.14.

In circumstances where there is a conflict in the evidence and doubt as to the status of the witness as an accomplice, the trial court is required to submit to the jury that fact of issue and instruct the jury not to consider the uncorroborated testimony if it finds that the witness was an accomplice witness, Navarro Vs. State, 863 S.W.2d. 191, 201 (Tex. App.-Austin 1993), pet ref'd.)

If it is not clear whether the witness In dispute should properly be classified as an accomplice, the trial court must make an initial determination as to whether the witness is an accomplice as a matter of Law, or as a matter of fact. In this case, the trial court gave the "accomplice In fact" instruction to the jury.

accopy Petition- For Discretionary Review

<u>PAGE 8</u>

Upon the law of accomplice witness testimony you are instructed that a person who has participated with someone else before, during, or after the commission of a crime is an accomplice witness. In such a case there must some evidence of an affirmative act on the witness' part to assist the commission of the offense. If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness merely because he or she knew of the offense and did not disclosed it even concealed it. The witness presence at the scene of the crime does render that witness an accomplice witness.

Now, if you find from the evidence that Camille Ashley was an accomplice, then you are further instructed that you cannot convict the defendant upon Camille Ashley was an accomplice, then you are aware of the testimony unless you frist believe that her testimony is true and shows the guilt of the defendant charged in the indictment; and then you cannot convict the defendant unless Camille Ashley's testimony is corroborated by other evidence tending connect the defendant with the—— charge for the offense but it must tend connect the defendant with it's commission and then from all the evidence you must believe beyond a reasonable doubt that he, the defendant is guilty of the offense charged against him; or if you have a reasonable doubt thereof, you will acquit the defendant - CC. R. ', 1, 55-56).

It is Appellant's position that based upon the undisputed facts presented regarding Camille Ashley's role in providing and driving the getaway or in cahoots with the male assailant, she was clearly susceptible prosecution. In closing argument, the prosecutor acknowledged her status as an accomplice witness:

Do we have the right man. Of course we know we have the right man. First of all, its his family that's involved in this. We've got Latavia Whatley's car — Latavia Whatley who works at that Denny's by the way, who called in conspicuously that day and didn't come into work that day. Her cousin's driving her car -- Camille Ashley is driving her car. I mean, I dont wont to dance around this. I think they're all together. I think they are. That's why we have this instruction in he charge for an accomplice witness. They're working together, but this trial is about what that man did. He took the action of actually

committing the robbery. Yes, the others may have helped him plan it and helped him plan it and helped him get away, but he did it. (R.R.V. 2, 108).

The record is devoid of evidence as to whether or not she was under indictment. The record is also devoid of any information regarding whether not Camille Ashley had been promised anything by the prosecutor for her testimony. Regardless, under the facts, this Court should review the efficiency of the evidence corroborating evidence to determine if tends to connect Appellant to the commission of the offense.

B. The independent evidence was insufficient to corroborate the testimony of Camille Ashley.

The evidence without the testimony of Camille Ashley that might arguably tend to connect Appellant to the offense is, as follows:

The robbery. Appellant's charge occurred on October 28, 2013.

On the day of the robbery, Appellant left the apartment of his sister, Delicia Ashley, in Calvert with their cousin, Camille Ashley, some time between 9:00 a.m. and 11:00 a.m., in a white vehicle. Delicia Ashley thought the vehicle might belong to Latavia Whatley, a cousin of Camille Ashley.

The perpetrator was described by Ryan Thomas and Amanda Kraft as wearing grey sweats and white cap.

The perpetrator of the robbery was see getting into a white KIA license tag BYL 7670.

The white KIA was followed by Ryan Thomas. He lost sight of it about 30 seconds near Nimitz Street and then continued to follow it until the police arrived.

Camille Ashley was found driving the suspect vehicle.

Appellant's wallet containing his expired by one-year driver's license, social security card and Workforce Commission card was found in the glove box of the KIA.

Grey sweats, white cap, purse and bank bags were found in the area where Ryan Thomas observed the KIA stopped.

Ms. Kraft identified Appellant in the Courtroom as he sat at counsel table, though she failed to identify him when shown a photo line-up following the incident.

cc/copy Petition For Discretionary Review

PAGE 10

The corroborating evidence presented amounts to (1) a very suggestive in h court identification; (2) evidence placing Appellant in Calvert with his cousin in a vehicle that was at some later point in the day involved n the robbery in College Station; (3) evidence that Appellant or someone else placed his wallet in the glove box of the vehicle involved n the robbery at some undermined date and time. The paltry evidence oes not tend to connect Appellant to the Robbery. It simply points he finger of suspicion at him and is insufficient. As the Fourteenth Court Of Appeals held when confronted with an almost identical set of corroborating facts:

We recognize that testimony place appellant in the company of the accomplice near the time of the offense may be considered as corroborating evidence, but evidence of guilt by association will not satisfy article 38.14 by itself, Cos ton Vs. State, 287 S.W. 2d. 671, 672 (Tex. Crim. App. 1956), Gaston Vs. State, 324 S.W. 3d. at 910.

In conclusion, the corroborating evidence is not sufficient to connect Appellant to the offense. For the reason, the Conviction should be reverse.

Rule 56. Orders on Petition For Review under 56.1

Appellant is requesting this to review this case under the above rule 56.1 (1)(2)(3) and (4) of the constitutional issues that has occurred n the obtaining a wrongful conviction at bar.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that ased upon the argument and authorities herein, this honorable Court Grant this Petition For Discretionary Review and reverse the judgment and set aside Appellant's conviction.

Respectfully Submitted
197/304
Antarius Demon Ashley #197/304
French M. Robertson Unit
12071 FM 3522
Abilene Tx 79601

cc copy Petition For Discretionary Review
PAGE 11

## CERTIFICATE OF SERVICE

I Antarius Demon Ashley, declare that a true and correct copy of the above Petition For Discretionary Review was placed in the French M. Robertson Unit mail on the 20 day of December, 2015.

Respectfully Submitted

Antarius Demon Ashley #1971304
French M. Robertson Unit
12071 FM 3522
~~Abilene~~ Abilene Tx. 79601

cc/copy Petition For Discretionary Review
PAGE 17



# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00004-CR

ANTARIUS DEMON ASHLEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 14-00152-CRF-85

## MEMORANDUM OPINION

In two issues, appellant, Antarius Demon Ashley, challenges his conviction for robbery. *See* TEX. PENAL CODE ANN. § 29.02 (West 2011). Specifically, appellant contends that the evidence supporting his conviction is insufficient and that the State did not proffer sufficient evidence to corroborate the testimony of an accomplice witness. Because we find that the State proffered sufficient evidence to corroborate the testimony

of an accomplice witness, and because the evidence supporting appellant's conviction is sufficient, we affirm.[1]

## I.    SUFFICIENCY OF THE EVIDENCE SUPPORTING APPELLANT'S CONVICTION

In his first issue, appellant argues that the evidence is insufficient to establish his identity as the perpetrator of the robbery because the victim, Amanda Kraft, was unable to identify him in a photo lineup shortly after the incident. Besides the identity element, appellant does not challenge any of the other elements of the charged offense.

## A.    Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

B.    Discussion

As noted earlier, appellant contends that the evidence is insufficient to establish his identity as the perpetrator of the robbery. "A conviction may be based on the

testimony of a single eyewitness." *Santiago v. State,* 425 S.W.3d 437, 443 (Tex. App.—

Houston [1st Dist.] 2011, pet. ref'd); *see Aguilar v. State,* 468 S.W.2d 75, 77 (Tex. Crim. App.

1971). However, to provide sufficient evidence of guilt, the eyewitness must give "clear,

direct, positive testimony" that the defendant committed the crime alleged. *Gilbert v.

State,* 429 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Here, Kraft provided the following testimony about the incident, which transpired

as she walked to her truck with money from Denny's that was supposed to be deposited

at the bank:

> He had a gray baseball cap on his head. The gray sweater had writing on
> it—like a team of some sort—and gray sweatpants. I don't remember what
> his shoes looked like.
>
> I got—my uncomfortable feeling got stronger so I tried to get in my
> truck. I got the door open, and he [appellant] was on me. I don't know if I
> turned from the feeling of somebody being behind me or of him turning me
> around; but from here up was in my truck, the rest of it was laying out on
> the ground, and he was literally laying on me and my purse was on my arm
> and behind me and he was trying to pull on it, but he was slamming me
> around. He kept repeating, "Shut up, bitch," because I was screaming like
> blood curdling, "Help me. Help me." And I was kicking and I was hitting
> and I was trying to push him off. And this went on for several seconds.
> And he pulled hard enough and my purse broke and he fell backwards.
> And I sat there for a second, and then my brain said scramble. So I
> scrambled back as fast as I could. And I was this close to having my door
> shut, and he ripped it open and was on me again. And I tried to fight back
> again and still screaming and seconds later he had freed my purse from
> behind me and took off.[2]

---

[2] It is also worth noting that the purported accomplice witness, Camille Ashley, admitted that she
saw appellant with a purse when she picked him up near the Denny's.

Thereafter, Kraft identified appellant in open court as the perpetrator of the robbery and noted that she was face to face with appellant during the robbery. However, Kraft admitted that she was unable to identify appellant in a photo lineup that was conducted shortly after the incident, though she explained that: "They showed me several photos; but I do apologize, it is very hard to depict a black male in black and white photos."

On appeal, appellant's identity argument hinges on Kraft's inability to identify him shortly after the incident as the perpetrator of the robbery. However, one eyewitness is sufficient to sustain a conviction, and Kraft identified appellant in open court as the perpetrator. *See Aguilar*, 468 S.W.2d at 77; *see also Santiago*, 425 S.W.3d at 443. Ultimately, whether appellant's argument casts doubt on Kraft's testimony is a credibility determination for the jury. *See Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("The alibi testimony, the lack of physical or forensic evidence, and the differences between the testimony of the witnesses are all factors for the jury to consider in weighing the evidence."). Following *Jackson*, we presume that the jury found Kraft's identification credible and defer to that finding. *See* 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton v. State*, 235 S.W.3d 772, 778-79 (Tex. Crim. App. 2007); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Johnson*, 176 S.W.3d at 78. Therefore, we conclude that the evidence is sufficient to support appellant's conviction for robbery. *See* TEX. PENAL CODE ANN. § 29.02; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule his first issue.

## II.     ACCOMPLICE-WITNESS TESTIMONY

In his second issue, appellant asserts that his conviction should be reversed because the State did not proffer sufficient evidence to corroborate the "inculpatory testimony of Camille Ashley, an accomplice witness."

### A.     Applicable Law

The Texas Court of Criminal Appeals has stated the standard of review for sufficiency of non-accomplice evidence as follows:

> [U]nder Texas Code of Criminal Procedure Article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense.   Evidence that the offense was committed is insufficient to corroborate an accomplice witness's testimony.   And an accomplice's testimony cannot be corroborated by prior statements made by the accomplice witness to a third person.
>
> . . . .
>
> When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense.   The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence.   Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence.

*Smith v. State*, 332 S.W.3d 425, 439, 442 (Tex. Crim. App. 2011) (internal citations omitted);

*see Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (noting that appellate courts

review non-accomplice evidence in the light most favorable to the verdict); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005).

The Texas Court of Criminal Appeals has also noted that: "There need only be some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007); *see Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) ("No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt."). Furthermore, when reviewing the sufficiency of the non-accomplice evidence, "all of the non-accomplice testimony is viewed together, rather than as isolated, unrelated incidents . . . ." *Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009). And "circumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (citing *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999)).

## B.    Discussion

Though Camille denied being involved in the planning or execution of the robbery, assuming that she was an accomplice witness, her testimony was corroborated by ample evidence, which independently supports the jury's determination that appellant committed the charged offense. First, Delicia Ashley testified that, on the day of the offense, appellant left with Camille in a white vehicle that belonged to Latavia Whatley, Camille's cousin. Second, Kraft identified appellant in open court as the

perpetrator of the robbery. She also described him as wearing a gray sweatshirt, gray sweatpants, and a gray baseball cap—all items found by police in a trash can near where appellant had been located. Kraft also noted that Latavia worked at Denny's, drove a white car, and did not show up to work on the day of the incident. Additionally, Ryan Thomas testified that he saw a heavyset, African-American man wearing a gray sweatshirt, gray pants, and a black and white hat beating up a woman in the Denny's parking lot. Thomas also saw the man take a purse from the women and then get into a white, four-door Kia with a license plate number of BYL7670.

Furthermore, Officer Damien Anderson of the College Station Police Department stated that when he located the white Kia with the matching license plate number, Camille was driving the vehicle alone. Though she initially lied, Camille eventually admitted that appellant had been in the car and directed Officer Anderson to look in the glove box, which contained appellant's wallet with his driver's license, among other things. Shortly after picking up appellant, Camille kicked appellant out of the car near 808 and 810 Nimitz Street—near the location where Officer James Ingram of the College Station Police Department found a pink and black purse that contained gray, vinyl bags that were labeled as belonging to Denny's, as well as Kraft's wallet and driver's license.[3]

---

[3] Officer Ingram noted that:

It's been my experience as a police officer and through my training that sometimes people will attempt to change their appearance by shedding items of clothing or get rid of weapons, anything like that when—when they're being pursued by the police. So it's

Officer Ingram also found the clothes that appellant allegedly wore during the robbery "sitting on top of bagged garbage" inside a trash can near where appellant had been located.

When viewing the non-accomplice evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence that "tends to connect the defendant to the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Smith*, 332 S.W.3d at 439; *Joubert*, 235 S.W.3d at 731; *Gill*, 873 S.W.2d at 48; *Killough v. State*, 718 S.W.2d 708, 711-712 (Tex. Crim. App. 1986) (holding that the testimony of an accomplice in the prosecution for aggravated robbery was sufficiently corroborated by evidence showing, among other things, that the defendant was linked to the truck used in the commission of the robbery). As such, we hold that the record contains sufficient evidence to corroborate the accomplice-witness evidence contained in the record and, therefore, satisfies article 38.14 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Joubert*, 235 S.W.3d at 731; *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (noting that if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled); *Gill*, 873 S.W.2d at 48. We therefore overrule appellant's second issue.

---

become a pretty standard practice for us to check trash cans in the area to see if there's anything that looks out of the ordinary.

## III. Conclusion

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 24, 2015
Do not publish
[CRPM]



Mr. Antonius Demon Ashley #1971884

French M. Robertson Unit

12071 FM. 3522

Abilene Tx. 79601

DEC 21

20

RECEIVED
DEC 24 2015
COURT OF APPEALS
WACO, TEXAS

—PM
DEC 21
2015

Shari Roessler
For the Tenth Court of Appeals
501 Washington Ave.
Waco Tx. 76701

Waco Tx. 76701

